IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **SANDRA G.**[1], <br><br>        Plaintiff, <br><br> v. <br><br> **KILOLO KIJAKAZI,** Acting Commissioner of Social Security, <br><br>        Defendant. | Case No. 2:22-cv-958-SI <br><br> **OPINION AND ORDER** |

Betsy R. Shepherd, 425 Riverwalk Manor Drive, Dallas, GA 30132. Of Attorneys for Plaintiff.

Natalie K. Wight, United States Attorney, and Kevin Danielson, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Jessamyn Hanna, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

       Sandra G. brings this action under § 205(g) of the Social Security Act (Act), *as amended*, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of the

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

Social Security Administration (Commissioner) denying Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Act. For the reasons below, the court reverses the Commissioner's decision and remands this case for further proceedings.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff first filed an application for Disability Insurance Benefits (DIB) and SSI on June 10, 2019, alleging a disability onset date of April 1, 2009. AR 14, 51, 222. Plaintiff later amended her alleged onset date to July 21, 2017. AR 216. Because she was only insured through 2011, this extinguished her Title II DIB claim. *Id.* Plaintiff was born on May 17, 1989 and was 28 years old on her amended alleged onset date. AR 51.

The Commissioner denied Plaintiff's claims upon initial review on December 10, 2019 and again on reconsideration on May 18, 2020. AR 59, 72, 87, 106. Plaintiff filed a written request for a hearing on July 8, 2020. AR 14. Plaintiff then appeared and testified by telephone before Administrative Law Judge (ALJ) John Sullivan on April 7, 2021. AR 27-48. The ALJ issued an unfavorable decision finding Plaintiff not disabled under the Act and therefore ineligible for SSI. AR 14-22. Plaintiff sought review by the Appeals Council but was denied, making the ALJ's decision the final decision of the Commissioner. AR 1. Plaintiff now seeks judicial review of the ALJ's decision by this court under 42 U.S.C. § 405(g).

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in

> significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. AR 16. At step two, the ALJ found that Plaintiff's attention-deficit/hyper-activity disorder (ADHD), panic attacks, social anxiety disorder, and generalized anxiety disorder constituted severe impairments, meaning they significantly limited Plaintiff's ability to perform basic work activities. *Id.* Although the ALJ found that Plaintiff's obesity, hypothyroidism, idiopathic hypersomnia, and migraine disorder were not severe, the ALJ still considered them when crafting the RFC. AR 17. At step three, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

Between steps three and four, the ALJ formulated Plaintiff's RFC. The ALJ found that Plaintiff could

>perform a full range of work at all exertional levels but with the
>following nonexertional limitations: she can perform simple,
>routine tasks at reasoning level 2 or less with simple work-related
>decisions. The claimant can occasionally interact with supervisors,
>coworkers, and the public. She would be off task up to but not
>including five percent scattered throughout the workday.

AR 18. At step four, the ALJ found that Plaintiff has no past relevant work. AR 21. At step five, the ALJ found, consistent with vocational expert testimony, that Plaintiff could perform work as a laundry sorter, with 85,000 jobs nationally, as a cleaner, with 400,000 jobs nationally, or as a floor cleaner, with 75,000 jobs nationally. AR 22. The ALJ then concluded that Plaintiff is not disabled. *Id.*

## DISCUSSION

In seeking review, Plaintiff argues that the ALJ erred by: (A) failing to provide clear and convincing reasons for discrediting Plaintiff's symptom testimony; (B) failing to provide germane reasons for discrediting lay witness testimony; and (C) discounting the psychodiagnostics report of Michelle Whitehead, Ph.D.

**A. Plaintiff's Subjective Symptom Testimony**

 **1. Standards**

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017).[2] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must

---

[2] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case

PAGE 7 – OPINION AND ORDER

record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

### 2. Analysis

Plaintiff testified that she is unable to work because her panic attacks make her unreliable. AR 36. When her anxiety is at its peak, Plaintiff has panic attacks daily, "sometimes several times a day." AR 37. When Plaintiff has a panic attack, she experiences shortness of breath, chest pain, racing thoughts, and "an overwhelming feeling of dread." *Id.* Plaintiff cannot think in the moment and requires time and space to calm down. AR 35, 37. It may take Plaintiff several days to recover from a severe attack. AR 888. Plaintiff's main triggers include leaving the house, driving, social interaction, increased stress, and medications. AR 35-40. Plaintiff also

testified that her panic attacks sometimes happen with no identifiable trigger. AR 36. Plaintiff's social anxiety also makes it difficult for her to even leave the house. AR 231, 234.

The ALJ found Plaintiff's statements regarding the intensity and limiting effect of her symptoms not entirely consistent with the evidence in the record. AR 19. Specifically, the ALJ gave three reasons for discounting Plaintiff's subjective symptom testimony: (1) improvement with treatment; (2) failure to follow treatment recommendations; and (3) inconsistency with mental status examinations. AR 19-20.

### a. Plaintiff's Improvement with Treatment

A claimant's improvement with treatment is "an important indicator of the intensity and persistence of . . . symptoms." 20 C.F.R. § 416.929(c)(3). "[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017); *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). "Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms. *Garrison*, 759 F.3d at 1017. A court must also consider "that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in the workplace." *Id.* "The fact that a person suffering from depression makes some improvement does not mean that the person's impairment no longer seriously affects his ability to function in a workplace." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (cleaned up).

As the Ninth Circuit explained in *Garrison*,

> It is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence,

PAGE 9 – OPINION AND ORDER

> and in such circumstances it is error for an ALJ to pick out a few
> isolated instances of improvement over a period of months or years
> and to treat them as a basis for concluding a claimant is capable of
> working.

*Garrison*, 759 F.3d at 1017.

The ALJ found that Plaintiff had "only occasionally reported having panic attacks during the period at issue," citing medical provider notes where Plaintiff reported that her anxiety was under control and that her tolerance for leaving the house was greatly improved. AR 19. The ALJ's focus on the time when Plaintiff's anxiety was best controlled ignores both the natural waxing and waning of mental health symptoms as well as the extreme limitations of environmental stressors. *See Garrison*, 759 F.3d at 1017.

In 2017, Plaintiff sought treatment as her anxiety was interfering with daily functioning and her symptoms were worsening. AR 408, 888. Plaintiff met criteria for generalized anxiety disorder and began therapy and medication management. AR 888-89. Plaintiff was subsequently diagnosed with panic disorder, ADHD, and social anxiety disorder. AR 763, 846. In fall 2017, Plaintiff consistently rated her anxiety at a five or six out of ten, while noting that it was typically a seven. AR 867, 869, 873, 874. While Plaintiff had not had a panic attack in several months, she still experienced anxiety daily. AR 859, 861, 867.

Plaintiff's improvement continued into 2018. In March 2018, Plaintiff reported a mild panic attack, but also reported that even though there were some spikes in anxiety, her anxiety was not as severe as it was before she started therapy. AR 835, 839. Plaintiff also noted that she was better able to tolerate social outings and shopping. AR 825, 845. Plaintiff's July 2018 assessment noted the decrease in anxiety since Plaintiff's diagnosis and treatment of ADHD. AR 760. Plaintiff's panic attacks had decreased from daily to only once or twice per month. *Id.* Plaintiff still experienced panic around certain triggers, such as loud noises and social situations.

*Id.* Plaintiff avoided driving, crowds, the grocery store, and unknown people whenever possible due to her intense anxiety. *Id.* Plaintiff no longer met criteria for generalized anxiety disorder and panic disorder, but still met criteria for social anxiety disorder. AR 760, 763. In October 2018, Plaintiff reported that her anxiety and ADHD were well-managed and "she's been able to manage life as it comes lately." AR 728. At the same time, Plaintiff reported significant struggles in online schooling. *E.g.* AR 730.

Then, in November and December 2018, Plaintiff reported that she could feel her anxiety creeping up again. AR 706, 718. By spring 2019, Plaintiff was experiencing multiple anxiety or panic attacks per month. AR 641, 647, 666, 671. She described her anxiety as "one step forward, two steps back." AR 637. The July 2019 assessment still noted that Plaintiff's symptoms had improved somewhat. AR 610. Although Plaintiff struggled, she was able to leave the house with family and friends. *Id.* Plaintiff still met criteria for social anxiety disorder and ADHD. *Id.* Plaintiff continued to experience severe anxiety several times a week in 2019. Plaintiff's anxiety had increased so much that by January 2020, she once again met criteria for generalized anxiety disorder, as well as for moderate to severe social anxiety disorder and panic attacks. AR 897, 1034-1042. At the end of January 2020, Plaintiff made two trips to the ER for a panic attack. AR 900, 991. While Plaintiff's anxiety attacks were well-managed for a time, that relief was short-lived, and Plaintiff continued to struggle with social anxiety during that time period.

Further, one of the reasons that Plaintiff's anxiety was better controlled is because she structured her life to accommodate her needs. Plaintiff does not have a driver's license because driving triggers panic attacks. AR 38. Plaintiff lives at home; she lived with a friend very briefly but "couldn't handle the panic attacks from being away from home." AR 36. Plaintiff relies on her mother for transportation and grocery shops with her on occasion. AR 897. Plaintiff's mother

attends all Plaintiff's medical appointments. *See, e.g.*, AR 322, 329, 372, 374, 377, 383, 718, 988. Plaintiff dropped out of school in tenth grade due to too many absences from illness and panic attacks. AR 885. Plaintiff received her GED and attempted online schooling but struggled even though the instructors were willing to work with her. AR 895.

Plaintiff had only limited periods of improvement. Additionally, because Plaintiff's periods of improvement came only when environmental stressors were severely limited, they provide no support that Plaintiff could function effectively in the workplace.

### b. Plaintiff's Failure to Maintain Treatment

The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. § 416.929(c)(3). Thus, failure to seek treatment is a basis on which to deny disability. 20 C.F.R. § 416.930(b). If, however, the claimant has a good reason for not seeking treatment, failure to seek treatment is not a proper basis for rejecting the claimant's subjective symptoms. *See* 20 C.F.R. § 416.930(c); *see also Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995) ("We certainly agree with all the other circuits that a disabled claimant cannot be denied benefits for failing to obtain medical treatment that would ameliorate his condition if he cannot afford that treatment."). Thus, an ALJ must consider a claimant's reasons for failing to adhere to recommended treatment before making an adverse credibility finding. *See Smolen*, 80 F.3d at 1284; *see also* Social Security Ruling (SSR) 16-3p, *available at* 2017 WL 5180304, at *9 (Oct. 25, 2017) (explaining that an ALJ "may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints" and that the Commissioner "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints").

The ALJ found inconsistent the fact that Plaintiff's treatment recently "has been infrequent," that she was discharged from therapy due to nonengagement, and that she "simply" stopping taking a prescribed medication. AR 19-20. But the ALJ failed to consider Plaintiff's reasons for failing to maintain treatment.

Plaintiff has a long history of medication avoidance, anxiety, and fear of side effects. AR 718, 895. This fear is particularly pronounced regarding psychiatric medications. AR 42. Much of this anxiety stems from Plaintiff witnessing adverse reactions in family members. Plaintiff's father "was on depression and anxiety medication but it did not agree with him, and he ended up going crazy on it." AR 761. Plaintiff's aunt also experienced worsening of mental health symptoms with medication. AR 845. Plaintiff herself has also experienced adverse reactions to a variety of medications, further increasing her anxiety. In August 2018, Plaintiff reported adverse reactions to allergy medications. AR 742. Loratadine caused fatigue while Allegra gave her heart palpitations and high adrenaline. AR 383. Levothyroxine caused dizziness and a depressed mood. AR 438. Adderall induced panic attacks and possibly cardiac arrythmia. AR 329, 392. Plaintiff reported that the side effects from lorazepam were worse than the anxiety. AR 590. Similarly, when Plaintiff was given Xanax at the ER, it made her feel worse; she was still feeling poorly two days later. AR 991.

Because of this anxiety, Plaintiff has avoided taking medication when at all possible. When Plaintiff sought treatment in 2017, she attended medication management appointments but expressed a desire to try treating her symptoms with therapy first. AR 402, 881. Plaintiff prefers as needed medications instead of regularly prescribed medications. AR 329. Plaintiff especially struggles with pills. At times, she has been completely unable to swallow pills because her anxiety increases and "she feels like her throat will swell up." AR 458. When possible, doctors

have accommodated for this by prescribing liquid medications, such as with her Vitamin D prescription. AR 538. But sometimes even taking the liquid is difficult for Plaintiff. AR 590.

With considerable support from her therapist, Plaintiff attempted different medications to treat her ADHD. AR 568, 590, 813. In the beginning, Ritalin was effective and Plaintiff noticed a marked improvement in focus. AR 760. Plaintiff noticed minimal side effects at first—some headaches and morning jitteriness. AR 802. However, as Plaintiff took Ritalin longer, she experienced increasing episodes of heart racing. AR 1069.

Even when Ritalin helped, Plaintiff struggled to take it consistently. AR 546. Any change in routine caused Plaintiff to miss doses. AR 627, 718, 806. When Plaintiff's anxiety increased, it made it difficult for her to restart the medication. AR 706. Plaintiff's providers prescribed Concerta but she was too afraid to take it. AR 590. The thought of adding more medications was overwhelming. AR 581.

The ALJ's characterization that Plaintiff "simply stopped using" Ritalin is not supported by substantial evidence. "[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)).

The ALJ also cites to Plaintiff's nonengagement in therapy but fails to address the specific moment in time. Plaintiff began counseling in 2019 with Best Care. AR 1090. Due to the global pandemic, the majority of Plaintiff's therapy sessions in 2020 were over the telephone. AR 1072-1090. In October 2020, Plaintiff was discharged due to nonengagement. AR 1090. Although the ALJ did not consider any possible reasons why Plaintiff did not maintain treatment, the Court speculates that the global pandemic and the limitation to telephone sessions may have had an impact on Plaintiff, who suffers from anxiety generally. The ALJ erred by failing to

PAGE 14 – OPINION AND ORDER

consider Plaintiff's reasons for not fully complying with treatment recommendations, as required by SSR 16-3p.

### c. Objective Medical Evidence and Clinical Examinations

An ALJ may consider the lack of corroborating objective medical evidence as a "relevant factor in determining the severity of the claimant's" alleged symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, "discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *see also Robbins*, 466 F.3d at 883; 20 C.F.R. § 416.929(c)(2), (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

The ALJ cited to examinations where Plaintiff presented with normal or euthymic mood and noted that "[o]nly rarely did she present with more concerning signs such as blunted affect, depressed and/or anxious mood, and/or poor eye contact." AR 19. The ALJ found inconsistency when Plaintiff stated that her anxiety was "really bad" during medical appointments but then presented at that same medical appointment with euthymic mood, normal psychomotor movements, and good memory. *Id.*; *see* AR 610. However, despite these presentations, Plaintiff's medical providers have consistently found she meets criteria for moderate to severe social anxiety disorder, and, when symptoms are worse, for generalized anxiety disorder and panic disorder. AR 610, 1042. Even when Plaintiff's GAD-7 score indicated moderate anxiety, Plaintiff presented as not anxious. AR 994. Plaintiff's symptoms of panic attacks have been documented at the ER when she has sought treatment for severe episodes. AR 901. And yet two

days after a panic attack so severe that she went to the ER twice, Plaintiff presented with not anxious mood. AR 992. Plaintiff often presents as anxious, but even when she does not, that does not discredit her testimony concerning how frequently she feels anxiety. The ALJ's finding here is not supported by substantial evidence. Further, because the Court rejects the ALJ's other two reasons for discrediting Plaintiff's testimony, any inconsistency with objective medical evidence is not sufficient on its own as a reason to discredit Plaintiff's testimony.

### B. Lay Witness Testimony

#### 1. Standards

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). However, "a lack of support from the 'overall medical evidence' is [] not a proper basis for disregarding [lay witness] observations. The fact that lay testimony and third-party function reports may offer a different perspective than medical records alone is precisely why such evidence is valuable at a hearing." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (citations omitted) (citing cases and concluding: "A lack of support from medical records is not a germane reason to give 'little weight' to those observations.")).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen v.*

*Chater*, 100 F.3d at 1467). Such an error may be harmless, and a court must determine whether the error is "'inconsequential to the ultimate nondisability determination' in the context of the record as a whole." *Id.* at 1122 (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008)). The error is harmless, for example, "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Id.* at 1117. When an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of a claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

**2. Analysis**

Plaintiff's mother filled out a function report in October 2019. In the report, Plaintiff's mother noted that Plaintiff's anxiety and panic attacks are so bad that sometimes Plaintiff cannot walk out the door. AR 253. She also reported that when they are shopping together, Plaintiff will occasionally have a panic attack around the crowds and need to wait in the car. *Id.* Plaintiff's mother also noted Plaintiff's difficulty with medication. AR 255. She reported that Plaintiff very rarely goes out alone and that they go out together grocery shopping about three times a month. AR 256. She reported that crowded places and loud noises bother Plaintiff. AR 257. And finally, Plaintiff's mother noted that Plaintiff's ability to concentrate, remember things, and follow instructions is compromised during a panic attack. AR 258.

The ALJ found that Plaintiff's mother's function report "contrasts with the treatment record where the claimant often reported stability." AR 19. This is not a germane reason for rejecting lay witness testimony and it is not supported by substantial evidence. As noted above, Plaintiff's condition waxed and waned. And even when Plaintiff's anxiety was well-managed,

she was leaving the house very rarely, only to occasionally go grocery shopping with her mother, and she struggled with medication, consistent with Plaintiff's mother's statement.

**C. Medical Evidence**

In November 2019, Plaintiff underwent comprehensive psychodiagnostic testing with Michelle Whitehead, Ph.D. AR 894-97. Dr. Whitehead submitted a report outlining Plaintiff's social, academic, employment, and psychiatric history. *Id.* The report gave the results of a mental status examination and noted that Plaintiff met criteria for moderate to severe Social Anxiety Disorder, Panic Attacks, combined presentation ADHD, and Sleep Disorder. AR 897. Dr. Whitehead found that Plaintiff "appeared to be significantly impaired about social contact and relationships." *Id.*

Plaintiff argues that the ALJ failed to provide legally sufficient reasons for discrediting this "medical opinion." The Commissioner, on the other hand, argues that this report was not a medical opinion.

"A medical opinion is a statement from a medical source about what [a claimant] can still do despite [their] impairment(s) and whether [they] have one or more impairment-related limitations or restrictions in" certain abilities, such as the "ability to perform physical demands of work activities" and the "ability to perform mental demands of work activities, such as . . . responding appropriately to supervisors, co-workers, or work pressures in a work setting." 20 C.F.R. § 404.1513(a)(2). Notably, statements that a Plaintiff is disabled or unable to work are inherently neither valuable nor persuasive and an ALJ need not provide any analysis about how such statements were considered. 20 C.F.R. § 404.1520b(c)(3)(i).

By contrast, "other medical evidence" includes "judgments about the nature and severity of [a claimant's] impairments" and information about a claimant's diagnoses, treatment, and prognosis. 20 C.F.R. § 404.1513(a)(3). As the ALJ noted, "Dr. Whitehead did not comment on

specific work related abilities and/or limitations." AR 20. Thus, Dr. Whitehead's report is "other medical evidence" and the ALJ did not commit legal error by failing to articulate whether it was persuasive nor by failing to address the supportability or consistency of the report. The report, however, further corroborates Plaintiff's subjective symptom testimony.

**D. Remedy**

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court

retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

The ALJ committed harmful error by failing to provide specific, clear, and convincing reasons to reject Plaintiff's subjective symptom testimony. After reviewing the record, however, conflicts and ambiguities remain between Plaintiff's testimony and the agency medical opinions regarding the severity and limiting effects of Plaintiff's mental health impairments. The Court therefore remands for further proceedings.

## CONCLUSION

The Court REVERSES the Commissioner's decision that Plaintiff was not disabled and REMANDS for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 26th day of July, 2023.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge